# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**ERICA COSEY and**
**BEULAH HOSKINS**                                                                    **PLAINTIFFS**

**v.**                                                                   **CASE NO. 4:12CV15-B-S**

**MICHAEL KINGDOM, in his individual capacity, and**
**THE CITY OF HOLLANDALE, MISSISSIPPI**                              **DEFENDANTS**

## MEMORANDUM OPINION

Presently before the court is Defendant City of Hollandale, Mississippi's motion for summary judgment. Upon due consideration of the parties' filings and supporting and opposing authority, the court is ready to rule.

Michael Kingdom applied for employment with the Hollandale Police Department in 2010. At a meeting of the City of Hollandale Board of Alderman, at which the application of Kingdom was under consideration, the city attorney informed the board members that Kingdom had been accused of sexual harassment in his previous employment, but that the case settled. The City of Hollandale hired Kingdom as a police officer in August 2010.

In November 2010, police dispatcher Tana Nelson complained that Kingdom touched her inappropriately.[1] The police chief reported the allegation to the mayor and board of aldermen. The board asked for a statement from both Nelson and Kingdom and held a "lengthy discussion" according to board minutes. The aldermen do not specifically recall what was discussed, but at

---

[1] Nelson is not a party to this lawsuit.

the completion of the discussion, no board action was taken. The board later decided to reinstate Kingdom since the evidence amassed were conflicting statements.

Erica Cosey alleges that on numerous occasions Kingdom verbally sexually harassed her. On February 18, 2011, Kingdom stopped Cosey for an alleged speeding violation. As Cosey reached for her license and registration, Kingdom rubbed her lower back and touched her buttocks. Cosey reported the incident the Mayor of Hollandale, Melvin Willis, and to her uncle, City of Hollandale Alderman and Police Commissioner Carl Dorsey. Cosey further filed a written complaint with the police department and appeared before the board of aldermen.

The board voted to allow the Washington County Sheriff Department and the Mississippi Bureau of Investigations to independently investigate the allegation, but when both declined, the board conducted another internal investigation. Again, relying on conflicting statements, the board reinstated Kingdom.

In early 2012, Ciero Paige, an inmate at the local jail, gave a written complaint against Kingdom to Police Chief James Hammer, who showed the allegation to Alderwoman and Police Commissioner Janice Ford.[2] Paige then complained to Ford in person that Kingdom had made inappropriate comments to her during confinement. Ford did not present the allegations to the rest of the board.

Beulah Hoskins alleges that between 2007 and 2011, Kingdom often drove near Hoskins as she rode her bicycle with her children. Hoskins states that Kingdom verbally sexually harassed her, including offering money in exchange for sexual intercourse. Hoskins reported Kingdom's behavior to a police officer and to the police dispatcher. In January 2012, Hoskins

---

[2] Paige is not a party to this lawsuit.

alleges that Kingdom approached her in a nightclub while he was on duty and inappropriately touched her buttocks. Hoskins submitted a written report to the Hollandale Chief of Police.

Plaintiffs initiated this action alleging that the City of Hollandale violated their Fourth Amendment rights, Equal Protection rights under the Fourteenth Amendment, substantive due process rights and exhibited deliberate indifference of sexual harassment by Kingdom pursuant to 42 U.S.C. § 1983 through its inaction or failure to supervise.[3] The City of Hollandale subsequently moved for summary judgment.[4]

**Standard of Review**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In reviewing the evidence, this court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000). In so doing, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151. A trial court may deny summary judgment in a

---

[3] Plaintiffs also pled claims against Kingdom in his individual capacity. Kingdom has not answered this suit. Plaintiffs sought a Clerk's Entry of Default as to Kingdom, which the Clerk of Court entered; however, Plaintiffs have not moved for a default judgment.

[4] Plaintiffs have expressly waived the state law claims. Plaintiffs failed to present an argument regarding their claim of procedural due process, thus this claim is also waived.

case where there is reason to believe that the better course would be to proceed to a full trial. *Anderson*, 477 U.S. at 255.

## Discussion

The City of Hollandale concedes that Plaintiffs have raised a factual question as to whether Kingdom's conduct violated Equal Protection, but maintain that all claims against the municipality fail based on Plaintiffs' inability to point to an established municipal policy or custom.

"It is well-established that a city is not liable under § 1983 on the theory of respondeat superior." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Instead, plaintiffs may prove municipal liability by showing that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id*. (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). An official policy can take various forms and may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id*. (quoting *Piotrowski*, 237 F.3d at 578). A policy or custom is official "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Id*. (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).[5]

---

[5] Plaintiffs argue that the two police commissioners and the mayor have final policymaking authority. While these officials play a role in presenting information to the board and supervising personnel, the board itself holds the final decision-making authority in terminating an employee. For instance, the mayor did suspend Kingdom in order to question his accuser; however the board made the ultimate decision to reinstate him to police duty.

Defendants argue that summary judgment should be granted because Plaintiffs cannot show an official custom. Plaintiffs allege that the city has a custom whereby municipal officials protect Kingdom from consequences stemming from his actions. Plaintiffs have provided sufficient evidence to create a genuine issue of material fact that officials were aware of Kingdom's constitutional violations and failed to act, resulting in a custom.

> Regarding knowledge that is attributable to a governing body, the Fifth Circuit has stated:
> Where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation. Knowledge of a continuing practice of city employees may be attributed to the governing body in one of two ways. Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

Police Commissioner Ford learned of an allegation of sexual harassment by officer Kingdom and admittedly did not report the incident to the board, despite her stated duty as being a liaison to the board for the police department.[6]

Further, Plaintiffs have created a factual dispute that the city had constructive knowledge of Kingdom's actions. The evidence in this case suggests that Kingdom was fairly notorious. Mayor Willis stated that he learned of some of Kingdom's actions through "street-talk" through

---

[6] Defendant argues that the court may only rely on the allegations presented to the board; however, it is a strange dichotomy to argue that while board members had actual knowledge, the board did not. Moreover, in this case, Plaintiffs allege that board members actively concealed information from being formally presented to the board as to avoid liability. Therefore, what each city official knew is relevant.

5

the community's knowledge of allegations. The mayor relayed to the assistant police chief Johnny Spand that he knew of Kingdom's allegations, and would only discuss Kingdom's behavior away from municipal buildings. After Mayor Willis' car burned, Willis told Spand that Kingdom was the likely culprit.

The court finds that Plaintiffs have presented sufficient evidence to create a factual dispute as to the city's constructive knowledge of Kingdom's persistent and widespread actions.

It further appears to the court that at least a factual dispute exists regarding whether the city had a custom of protecting Kingdom based on its inaction in formally presenting allegations to the board or providing a consequence for Kingdom's behavior.[7] Police chief Hammer and assistant chief Spand amassed a file of Kingdom's wrongdoings, and informed the mayor and an alderman that the two wished to present evidence to the board at a called meeting in order to request Kingdom's termination. The night before the called board meeting, police commissioners Ford and Dorsey called a special meeting in which the mayor notified Hammer and Spand that both were terminated. The timing of the terminations, without stated justification, raises suspicion. Following the meeting, the file created on Kingdom disappeared and his employment record appeared to the new police chief to have been cleared out.

Plaintiffs must then show a direct causal link between the policy or custom and the violation. *Piotrowski*, 237 F.3d at 580. There is at least some evidence that a custom of

---

[7] Defendant relies on *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 388 (5th Cir. 2000), for the proposition that if any type of investigation is conducted into what the allegations presented to the board, then the municipality was not deliberately indifferent. The Fifth Circuit determined in *Doe II* that based on the particular facts of the case, the school's investigation was an adequate response to the allegations; however, the court did not issue a blanket rule of law stating that an investigation where officials merely take the statements of the accused and accuser eliminates liability.

protecting Kingdom or ignoring his actions was in place prior to Plaintiffs' allegations. Evidence after the allegations of harassment that purports to show a custom has been in place is relevant.

Kingdom's continued work as a police officer provided an outlet to harass various women. Certainly, if city officials ignored Kingdom's behavior and intentionally failed to present allegations to the board to create plausible deniability, their actions resulted in Kingdom's continued employment as a police officer. There is a factual dispute for a jury to decide whether a custom of not holding Kingdom accountable for his actions was the moving force behind his alleged continued harassment.

**Conclusion**

There exists a genuine material fact as to whether certain aldermen knew of sexual harassment yet failed to present it to the board and whether the city protected Kingdom.

For the foregoing reasons, the court finds that the defendant's motion for summary judgment should be and the same is hereby denied. A separate order in accord with this opinion will issue this day.

This, the 30th day of October, 2013.

    /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**